THE AKRON, CANTON & YOUNGSTOWN RY. CO. *v.*
WHITTAKER.

(Decided April 30, 1929.)

*Messrs. Waters, Andress, Hagelbarger, Wise & Maxon,* for plaintiff in error.
*Messrs. Doolittle, Foust & Holden,* for defendant in error.

WASHBURN, J.   Harold C. Whittaker, a brakeman in the employ of the Akron, Canton & Youngstown Railway Company, sued that company and recovered a judgment for $7,000 for injuries which he received, while engaged in interstate traffic, by being thrown from an unloaded box car, which was the first of three cars which was run ahead of the engine, in the

night season, and which car left the track on a curve at a certain crossing.

There was evidence tending to prove that the derailment of the car was caused, in part at least, by a defect in the track at said crossing in that the space between the rails and the planking on said crossing was filled with hard, frozen, solid material, and it was charged in the petition that the railway company knew of such condition, or that it could have discovered the same "by reasonable and proper care and inspection of said track," and that it was negligent in failing "to make any inspection or examination of said track previous to the operation of said train over the same."

The chief error complained of relates to said specification of negligence; but the petition also charged, and there was evidence tending to prove, that the railway company was negligent in operating the three cars in front of the engine, so as to prevent the light of the engine shining on said track, and in operating a train so made up over the crossing, which was on a curve, "at a rate of speed which was negligent and dangerous to the life and limb of its employees employed and riding upon said cars, including the plaintiff." And there was also the general charge that the railway company failed to exercise due care to provide plaintiff "a safe place to work."

The evidence as to how the track at said crossing became in said defective condition, and as to how long it was in that condition before the accident, is meager, and consists entirely of inferences, and the railway company offered no evidence whatever of any inspection of said track.

The railway company submitted twelve special requests to charge before argument, and the court gave them all except No. VIII, which is as follows:

"I say to you that if you find that this crossing was used as a driveway by the Goodyear Tire & Rubber Company, and that said company, through its servants, scraped the roadway on either side of said crossing recently before the accident, and thereby filled the space between the rails and planking, and causing the derailment in this case, the defendant would not be liable for any defect in said crossing, if you find any existed at the time of the accident, unless you find that the defendant had actual or constructive notice of such filling up of the crossing.

"By constructive notice I mean that the filling up of said crossing must have existed a reasonable length of time, so that the defendant company would likely have known of such condition under all the circumstances proven in this case."

Minor objections to said request are that there was no evidence tending to prove that the Goodyear Tire & Rubber Company, by scraping the roadway, filled the space between the planking and rails at said crossing, and that the request is misleading, in that the jurors might understand it to mean that their finding on the one specification of negligence referred to therein controlled their verdict, and that there could be no recovery on any other specification of negligence.

But the more serious objection relates to the definition of constructive notice. A master owes a duty to his servants in reference to defects in the instrumentalities with which, and the place in which, the

servants work, and that duty is not limited to such defects as the master knows about, or such as have existed for such length of time that the master would likely know about them, but includes such defects as the master, by the exercise of reasonable care, would know about. The master does not perform his full duty to his servants unless he exercises ordinary care and diligence in discovering defects, and it is the province of the jury to determine, in the first instance, whether, in a given case, the master, by the exercise of ordinary care and diligence, should have discovered a given defect.

In this case the railway company was charged with notice of the defective condition of its track if it had existed for such a length of time that the company "would have observed its condition if it had exercised ordinary prudence," as the court charged in the general charge, rather than if it had existed for such a time that the railway company "would likely have known of such condition" regardless of whether it made any inspection or exercised ordinary care in ascertaining the condition of its track, as the court was asked to charge in said request.

We hold that the refusal to give said request before argument was not error.

There is one other claim of error, and that is that "the verdict of the jury is against the weight of the evidence, and not sustained by any evidence as to the defendant below having notice of the filled and frozen condition of the track at the crossing."

There was evidence as to weather conditions which justify the conclusion that said defect existed for at least one day, and possibly longer. It is true that there was evidence that cars passed over said

crossing safely during the previous night, but it does not appear whether they were loaded or light, and there was evidence also that the derailed cars would have passed over the crossing safely if they had been loaded, or had been preceded by the engine, or had been traveling downgrade instead of up grade; and, of course, an inspection would have revealed the condition of the crossing.

This evidence was considered by the jury and has a bearing on the question of whether the railway company exercised ordinary care in keeping informed as to the condition of the place where its servants worked, or was negligent in using said track in the manner in which it did under all the circumstances.

As has been said, the railway company offered no evidence of inspection or of its course of conduct with reference to inspection. The accident occurred in the night season, when it was dark; the cars were ahead of the engine, it was impossible to see the track, and difficult for those in the engine to see the signals of those on the front end; the condition of the track, due to weather conditions, and the fact that the train was on a curve and a heavy up grade, rendered rapid movement desirable, if not necessary; there was the possibility of some sort of obstruction at said crossing which might cause derailment of an unloaded car by the car climbing the outer rail on the curve at the crossing; as to all of which the railway company was charged with notice, and the jury had a right to consider all of these things in determining what ordinary care and diligence required of the railway company in discovering the condition of its track. Under all the circum-

stances disclosed by the record, we cannot say that the finding of the jury that the railway company was charged with notice of the defective condition of its track was manifestly against the weight of the evidence.

Moreover, as we have set forth, there were other charges of negligence, and there was some evidence tending to prove that the derailment might not have caused the injury if a signal to stop could have been easily and quickly seen or the train had been operated at a rate of speed which was reasonable and proper under all the circumstances.

*Judgment affirmed.*

Funk, P. J., and Pardee, J., concur.